UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ONTIA VIVERETTE,

                Plaintiff,

-against-

JUDGE SUSAN R. WINOGRAD, in her official capacity, et al.,

                Defendants.

1:25-CV-7168 (LTS)

ORDER OF DISMISSAL

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff Ontia Viverette, who is appearing *pro se*, brings this action under 42 U.S.C. § 1983, alleging violations of her federal constitutional rights. In her complaint, she seeks the following relief: (1) a temporary restraining order "enjoining enforcement of [a state court issued] warrant of [her] eviction [from her Bronx apartment] scheduled for September 2, 2025"; (2) a preliminary injunction "preventing Defendants from enforcing any warrant of eviction arising from [a] May 8, 2025 [state court] judgment"; (3) a declaration that the abovementioned May 8, 2025 state court judgment "is void for lack of service and jurisdiction"; (4) leave "to amend [her] Complaint after the imminent eviction threat is resolved to expand claims and seek damages"; and (5) "other and further relief as the Court deems just and proper." (ECF 1, at 4.) Plaintiff has filed, with her complaint, an order to show cause for a temporary restraining order and a preliminary injunction ("OTSC") in which she asks the Court to: (1) enjoin the defendants, "their agents, officers, employees, and all persons acting in concert with them, from enforcing [a state court issued] warrant of [her] eviction [from her Bronx apartment] scheduled for September 2, 2025"; (2) "preserv[e] the status quo pending adjudication of Plaintiff's claims that the [abovementioned] May 8, 2025 judgment is void for lack of service and jurisdiction"; and

(3) "grant[] such other relief as this Court deems just and proper." (ECF 4, at 1.) She has also filed an affirmation in support of her OTSC ("affirmation"). (ECF 5.)

Plaintiff sues the following defendants: (1) Susan R. Winograd, a Judge of the Civil Court of the City of New York, Bronx County, Housing Part ("Housing Court"); (2) Rina Gurung, a Judge of the same court; (3) Amira E. Hassan, a Judge of the same court; (4) Ta-Tanisha James, a Justice of the New York Supreme Court, Appellate Term, First Department ("Appellate Term"); (5) unidentified defendant "Jane Doe," whom Plaintiff describes as "the Supervising Clerk of Bronx Housing Court" ("Jane Doe Housing Court Clerk"); and (6) Intervale Gardens LLC ("IG"), which appears to be Plaintiff's landlord. (ECF 1, at 2.) Plaintiff sues Judges Winograd, Gurung, and Hassan, as well as Justice James and Jane Doe Housing Court Clerk, in their official capacities.[1]

By order dated September 2, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[2] For the reasons discussed below, the Court dismisses this action and denies all of Plaintiff's requests for immediate injunctive relief, including those requests for immediate injunctive relief in both Plaintiff's OTSC and in her complaint.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

---

[1] The Court understands that Plaintiff is suing these defendants in their official and individual capacities.

[2] Rule 5.2(a)(3) of the Federal Rules of Civil Procedure requires that court submissions that refer to a minor child do so only by using the child's name's initials, not the child's full name. Fed. R. Civ. P. 5.2(a)(3). In her *in forma pauperis* application, Plaintiff has revealed the full name of a minor child. In abundance of caution, the Court has directed the Clerk of Court to restrict electronic access to that submission to a "case participant-only" basis.

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

**BACKGROUND**

Plaintiff alleges the following in her complaint: On May 8, 2025, Judge Winograd "entered judgment against Plaintiff for alleged [rent] arrears exceeding $30,000, despite Plaintiff never being served with the Petition or Notice of Petition."[3] (ECF 1, at 2.) IG, Plaintiff's landlord, was "the petitioner in the Housing Court proceeding." (*Id.*) The judgment was served in Plaintiff's apartment building, but at Apartment 5F, not Apartment 3A, which is Plaintiff's apartment.[4] "Because no service was made, personal jurisdiction never attached, rendering the . . . judgment void." (*Id.*) The Housing Court then "issued eviction warrants."[5] (*Id.*) Upon learning of the existence of the judgment, Plaintiff moved to vacate it in May 2025; she states that her motion "has never appeared on the NYSCEF docket" and that "[t]he suppression of this

---

[3] "This judgment was entered on default for 'failure to answer.'" (ECF 5, at 1.) Plaintiff has attached to her complaint a copy of a Housing Court Decision and Order, dated April 22, 2025, indicating that a "Decision and Order for entry of Judgment is rendered based upon [R]espondent['s] failure to answer," awarding possession of Plaintiff's apartment to IG and against Plaintiff and two other unidentified individuals who were determined to be in default; the Decision and Order also held that a warrant of eviction was to be issued against Plaintiff and the other unidentified individuals, and that the earliest date that such a warrant could be executed would be April 23, 2025. (ECF 1, at 8.) Plaintiff has further attached to her complaint a copy of Housing Court Landlord and Tenant Judgment, dated April 22, 2025, awarding possession of that apartment to IG, directing that a warrant of Plaintiff's eviction issue, directing that the earliest that the warrant could be executed would be on April 23, 2025, and noting that the judgment was entered on May 8, 2025, and that the warrant of eviction was issued to the New York City Marshal on that same date. (*Id.* at 9.)

[4] Plaintiff has attached to her a complaint a copy of an "Affidavit of Conspicuous Service" that asserts that a notice of petition, petition, and a notice of electronic filing was served on Plaintiff by posting those documents on Plaintiff's door on two occasions, once on May 16, 2024, and again on May 17, 2024, and that they were also served by first class and certified mail on May 18, 2024, but that such service was performed at Apartment 5F of the building at issue, not Apartment 3A, where Plaintiff alleges she resides. (ECF 1, at 11.)

[5] Plaintiff has attached to her complaint a copy of an eviction notice from the New York City Marshal that is dated July 17, 2025, and that states that the earliest eviction date would be August 1, 2025. (ECF 1, at 18.)

filing deprived [her] of the ability to obtain review or appeal."[6] (ECF 5, at 1.) She then filed orders to show cause requests challenging the abovementioned judgment on August 6, 11, 19, and 22, 2025, but Judges Winograd, Gurung, and Hassan "denied them without addressing jurisdiction, sometimes through unsigned or conclusory notations such as 'Denied' or 'See order 8/6.'" (ECF 1, at 3.) "On August 22, 2025, Judge Winograd denied Plaintiff's [order to show cause request] with the bare notation 'Denied; $49,000 owed,' conditioning relief on Plaintiff's ability to pay arrears while ignoring jurisdiction and standing."[7] (*Id.*)

Plaintiff states that she "is being punished for 'failure to answer' despite never being served." (*Id.*) She is "now subject to an active warrant of eviction scheduled for September 2, 2025."

## DISCUSSION

### A.   The *Rooker-Feldman* doctrine

Plaintiff seems to ask this Court to overturn a final judgment of the Housing Court directing that possession of the apartment at issue be given to IG and that Plaintiff be evicted from that apartment. Such relief is barred under the *Rooker-Feldman* doctrine. Under this doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn that final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005). The *Rooker-Feldman* doctrine "precludes a United States district court from

---

[6] Plaintiff alleges that Jane Doe Housing Court Clerk "refus[ed], delay[ed], or suppress[ed] Plaintiff's submissions, thereby impairing Plaintiff's access to the court and appellate review." (ECF 1, at 2.) Plaintiff, however, does not allege any facts supporting such allegations.

[7] Plaintiff also alleges that Justice James, of the Appellate Term, "issued rulings in Plaintiff's appeal without addressing jurisdictional defects or due process violations." (ECF 1, at 2.)

exercising subject-matter jurisdiction." *Id.* at 291. It applies when a litigant seeks relief that invites a federal district court to reject or overturn a Housing Court judgment directing a landlord's possession of an apartment and the litigant's eviction from that apartment. *See Lewis v. Mohammad*, No. 25-CV-3109 (NCM) (MMH), 2025 WL 2371004, at *4 (E.D.N.Y. Aug. 14, 2025) ("To the extent that plaintiff claims that he was deprived of due process in the state housing court, and that his eviction is unlawful, this claim is barred under the *Rooker-Feldman* doctrine. . . . Plaintiff, having lost in the state court eviction proceedings, now challenges the results of those proceedings and effectively seeks to overturn the state court's decision which was issued prior to the commencement of this action. The relief plaintiff requests would require this Court to void the state court's Decision/Order After Trial in the eviction case. Given the Court lacks authority to review the state court's eviction order and overturn it pursuant to the *Rooker-Feldman* doctrine, such relief is foreclosed."); *Bey v. Ferdinand*, No. 1:24-CV-6684 (LLS), 2025 WL 1505041, at *4 (S.D.N.Y. May 21, 2025) ("To the extent that Plaintiff asks this Court to overturn a final order or judgment issued by the Manhattan Housing Court . . . in which that court denied Plaintiff's attempt to prevent or stay his eviction, the *Rooker-Feldman* doctrine requires the dismissal of such claims. . . . This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final state housing court decision ordering an eviction after a holdover proceeding." (collecting cases)); *Kristopher v. Stone Street Props., LLC*, No. 1:13-CV-0566 (RJS), 2013 WL 499752, at *3 (S.D.N.Y. Jan. 29, 2013) ("[T]he state housing court has already entered a default judgment against Plaintiff and issued a warrant of eviction. . . . [T]o the extent that Plaintiff is now seeking to challenge an order, judgment, or warrant of the state housing court, the Court finds that it lacks the jurisdiction, under the *Rooker-Feldman* doctrine, to grant Plaintiff's requested relief.").

Federal district court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *See Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (internal quotation marks and citation omitted).

Because Plaintiff seeks this Court's review and its rejection or overturning of a final state court judgment (the Housing Court judgment entered May 8, 2025), the *Rooker-Feldman* doctrine bars this Court from granting Plaintiff such relief. The Court therefore dismisses all of Plaintiff's claims that challenge that judgment, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291. This includes any claims for relief seeking the Court's enjoining of the execution of a warrant of Plaintiff's eviction from the apartment at issue that is scheduled for September 2, 2025. *See Jordan v. Levine*, 536 F. App'x 158, 159 (2d Cir. 2013) (summary order) (holding that the *Rooker-Feldman* doctrine requirements were satisfied when a litigant sought "an order staying the enforcement of a state court warrant of eviction . . . . [because his claims] ar[o]se from and concern[ed] only the state court eviction judgment and were filed after that judgment was entered"); *Ceccarelli v. Morgan Stanley Private Bank Nat'l Ass'n.*, 763 F. Supp. 3d 550, 558-59 (S.D.N.Y. 2025) (holding that a demand for relief that requests, in the context of a foreclosure eviction, "the '[v]acating, setting aside and permanently staying enforcement of the improperly procured state Judgment . . . as null and void *ab initio*' . . . . 'would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error,'" and was, therefore, precluded by the *Rooker-Feldman* doctrine (citations omitted)), *appeal*

7

*pending*, No. 25-443 (2d Cir); *Kristopher*, 2013 WL 499752, at *3; *see also Sung Cho v. City of New York*, 910 F.3d 639, 645 (2d Cir. 2018) ("Since *Exxon Mobil*, we have applied the *Rooker-Feldman* doctrine with some frequency to cases involving suits directly against state-court judges, or in which error by state-court judges in state-court proceedings is asserted, frequently in the foreclosure process." (footnotes omitted)).

**B.    Eleventh Amendment immunity**

To extent that Plaintiff asserts claims against Judges Winograd, Gurung, and Hassan, as well as against Justice James and Jane Doe Housing Court Clerk, in their respective official capacities as New York State judicial officers and as a New York State court clerk, the Court must dismiss Plaintiff's claims for damages and her claims for retrospective declaratory relief pursuant to the doctrine of Eleventh Amendment immunity. This doctrine normally bars claims for relief against state officers, including state court judges and state court clerks, in their respective official capacities. *See Libertarian Party of Erie Cnty. v. Cuomo* ("*Libertarian Party*"), 970 F.3d 106, 122-23 (2d Cir. 2020) (noting, in the context of official-capacity claims raised against state court judges, that "[a]n action against a state official in his official capacity is deemed an action against the state itself, which possesses sovereign immunity under the Eleventh Amendment" (citations omitted)) *abrogated on other grounds*, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022); *Muhammad v. Breen*, No. 3:24-CV-0037 (DNH) (ML), 2025 WL 1610581, at *5 (N.D.N.Y. Jan. 28, 2025) (applying Eleventh Amendment immunity to official-capacity claims brought against a state court clerk), *report & recommendation adopted*, 2025 WL 1337804 (N.D.N.Y. May 7, 2025); *Braithwaite v. Tropea*, No. 23-CV-1431 (JS) (AYS), 2023 WL 4207907, at *4 (E.D.N.Y. June 27, 2023) (same); *Fishman v. New York State Unified Court Sys.*, No. 1:21-CV-3517 (CS), 2021 WL 2206491, at *3 (S.D.N.Y. June 1, 2021) (same); *see generally Irazu v. Oliva Sains De Aja*, No. 3:21-CV-0618, 2022 WL 22846597, at *4

8

(D. Conn. Mar. 8, 2022) ("Judicial employees . . . are considered state officials whose official duties are immunized from claims under the Eleventh Amendment."), *report & recommendation adopted*, (D. Conn. Dec. 12, 2022) (text order), *aff'd*, No. 23-702-cv, 2023 WL 8447256 (2d Cir. Dec. 6, 2023) (summary order). This includes claims for damages and retrospective declaratory and injunctive relief. *See T.W. v. New York State Bd. of Law Examiners*, 110 F.4th 71, 91-95 (2d Cir. 2024); *Libertarian Party*, 970 F.3d at 122-23. It does not preclude, however, claims for relief against state officers, in their official capacities, in which prospective injunctive relief is sought. *Ex parte Young*, 209 U.S. 123, 155-56 (1908); *see Green v. Mansour*, 474 U.S. 64, 68 (1985); *T.W.*, 110 F.4th at 91-95; *Libertarian Party*, 970 F.3d at 122-23.

To the extent that Plaintiff seeks damages and retrospective declaratory relief (a declaration that the Housing Court's May 8, 2025 judgment "is void for lack of service and jurisdiction" (ECF 1, at 4)) against the abovementioned defendants, in their official capacities, the Court dismisses such claims, under the doctrine of Eleventh Amendment immunity, for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); Fed. R. Civ. P. 12(h)(3); *Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) ("[U]nless New York waived its immunity, the district court lacked subject matter jurisdiction."); *Atl. Healthcare Benefits Tr. v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because it affects our subject matter jurisdiction.").

**C.     Judicial immunity**

The Court must also dismiss, under the doctrine of judicial immunity, Plaintiff's claims against Judges Winograd, Gurung, and Hassan, as well as his claims against Justice James and Jane Doe Housing Court Clerk, for damages and for injunctive relief, in their individual capacities. Under this doctrine, judges are absolutely immune from suit for damages in their individual capacities for any actions taken within the scope of their judicial responsibilities. *See*

9

*Mireles v. Waco*, 502 U.S. 9, 9-12 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Courts have extended this immunity from damages to "others who perform functions closely associated with the judicial process," *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985), when they are performing discretionary acts of a judicial nature that are essential to the judicial process, *see Rodriguez v. Weprin*, 116 F.3d 62, 67 (2d Cir. 1997); *Oliver v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988). In addition, 42 U.S.C. § 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Courts have also extended this amendment's immunity from injunctive relief to "judicial employees entitled to judicial and quasi-judicial immunity." *Triestman v. McGinty*, 804 F. App'x 98, 100 (2d Cir. 2020) (summary order); *Starke v. Fuentes*, 7:25-CV-3108 (PMH), 2025 WL 2299258, at *4 (S.D.N.Y. Aug. 7, 2025); *Bey*, 2025 WL 1505041, at *5; *Davis v. Thompson*, No. 23-CV-0705 (RPK) (SJB), 2024

WL 1018495, at *4 (E.D.N.Y. Mar. 8, 2024); *Caldwell v. Pesce*, 83 F. Supp. 3d 472, 484. (E.D.N.Y. 2015), *aff'd*, 639 F. App'x 38 (2d Cir. 2016) (summary order).

Housing Court judges, as New York State judicial officers, enjoy judicial immunity when presiding over proceedings like the eviction proceeding described in Plaintiff's complaint, OTSC, and affirmation. *See Bey*, 2025 WL 1505041, at *5; *Powell v. N.Y. Hous. Court*, No. 1:23-CV-4617 (MKV), 2023 WL 6606846, at *3 (S.D.N.Y. Oct. 10, 2023); *Weissbrod v. Hous. Part of the Civil Court of the City of New York*, 293 F. Supp. 2d 349, 354-55 (S.D.N.Y. 2003); *McAllan v. Malatzky*, No. 1:97-CV-8291 (JGK), 1998 WL 24369, at *5 (S.D.N.Y. Jan. 22, 1998), *aff'd*, 173 F.3d 845 (2d Cir. 1999) (summary order). This immunity has been extended to administrative court clerks, including Housing Court clerks, when performing discretionary acts of a judicial nature that are essential to the judicial process. *See Bey*, 2025 WL 1505041, at *5; *Gaydu v. Bainer*, No. 3:19-CV-1120 (MPS), 2021 WL 2073919, at *7 (D. Conn. May 24, 2021); *Charles v. O'Garro*, No. 3:18-CV-0729 (SRU), 2018 WL 2926307, at *3 (D. Conn. June 11, 2018).

Plaintiff appears to assert claims against Judges Winograd, Gurung, and Hassan arising from their actions and rulings in Housing Court proceedings in which Plaintiff was a party, claims against Justice James arising for her actions and rulings in what appears to be Plaintiff's appeal of the abovementioned judgment of eviction, and claims against Jane Doe Housing Court Clerk arising from her actions in carrying out her duties associated with and essential to the judicial process (her filing duties). Plaintiff, however, fails to allege any facts showing that, in taking those actions and/or making such rulings, any of these defendants acted beyond the scope of their judicial responsibilities or outside their jurisdiction. *See Mireles*, 509 U.S. at 11-12. Because Plaintiff sues Judges Winograd, Gurung, and Hassan, as well as Justice James, for "acts

arising out of, or related to, individual cases before" them, *Bliven*, 579 F.3d at 210, and because she sues Jane Doe Housing Court Clerk arising from her discretionary acts of a judicial nature that were essential to the judicial process, the doctrine of judicial immunity applies to any claims under Section 1983 for damages and injunctive relief against these defendants in their individual capacities.[8] The Court therefore dismisses these claims under the doctrine of judicial immunity, and consequently, because Plaintiff seeks monetary relief from defendants who are immune from such relief, *see* § 1915(e)(2)(B)(iii), and as frivolous, *see* § 1915(e)(2)(B)(i); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

**D.     Claims against IG**

The Court must dismiss Plaintiff's claims against IG, which are brought under Section 1983. A claim for relief under Section 1983 must allege facts showing that a defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." § 1983. Thus, to state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose

---

[8] The amendment to Section 1983, allowing for injunctive relief against a judicial officer only if a state court declaratory decree was violated or state court declaratory relief is unavailable, precludes Plaintiff from seeking injunctive relief against these defendants. This is so because Plaintiff can—and apparently did, in part, though seemingly unsuccessfully—seek review of at least some these defendants' actions and/or rulings in a New York State appellate court (the Appellate Term; the New York Supreme Court, Appellate Division; and in the New York Court of Appeals, New York State's highest court). (*See* ECF 1, at 2); *Berlin v. Meijia*, No. 15-CV-5308 (JMA), 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017) ("Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court."), *appeal dismissed*, No. 17-3589 (2d Cir. Apr. 18, 2018) (effective May 18, 2018).

of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor." (internal quotation marks and citation omitted, emphasis in original)). Private entities are not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . ." (internal quotation marks and citations omitted)).

The activity of a private entity may be considered to be state action for the purpose of Section 1983 liability, however, in the following three situations: (1) when the entity acts using the coercive power of the State or is controlled by the State (the "compulsion test"); (2) when the State provides significant encouragement to the entity, the entity willfully participates in joint activity with the State, or the entity's functions are entwined with State policies (the "joint action" or "close nexus" test); or (3) when the State has delegated a public function to the entity (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted).

The fundamental question under each test is whether the private entity's challenged actions are "'fairly attributable'" to the State. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). In analyzing whether a private entity has acted as a state actor for the purpose of Section 1983 liability, a court must first "identify[ ] the specific conduct of which the plaintiff complains, rather than consider the general characteristics of the entity." *Id* (internal quotation marks and citation omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52

13

(1999). Thus, a private landlord's pursuit of a judgment (*see* ECF 1, at 2) (IG's "seeking and enforcing a judgment"), via state court litigation, that would cause its tenant's eviction does not make that private landlord a state actor for the purposes of Section 1983 liability. *See Gorawara v. Caprio*, No. 3:19-CV-0756 (MPS), 2021 WL 4441738, at *10 (D. Conn. Sept. 28, 2011); *Wiesner v. 321 W. 16th St. Assocs.*, No. 1:00-CV-1423 (RWS), 2000 WL 1191075, at *9 (S.D.N.Y. Aug. 22, 2000) ("Wiesner contends that there was state action in that the Defendants obtained a judgment of eviction against her in state court. The [United States Court of Appeals for the] Second Circuit has rejected the theory that state action exists in an eviction by a private landlord where the only connection between the state and the landlord is the landlord's use of state legal process available to all landlords." (citing *McGuane v. Chenanco Court, Inc.*, 431 F.2d 1189, 1190 (2d Cir. 1970)); *Foster v. New Horizons Assocs.*, No. 1:88-CV-5784 (TPG), 1990 WL 124534, at *1 (S.D.N.Y. Aug. 17, 1990) ("No state action exists in an eviction by a private landlord where the only connection between the state and the landlord is the landlord's use of state legal process." (citing same)).

Plaintiff alleges no facts showing that IG, a private landlord, has acted under color of state law in seeking the enforcement of a Housing Court judgment directing its possession of the apartment at issue and Plaintiff's eviction from that apartment. The Court therefore dismisses Plaintiff's claims under Section 1983 against IG for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

E.     **Leave to amend is denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court

declines to grant Plaintiff leave to file an amended complaint. While the Court understands that Plaintiff's eviction will likely have serious negative consequences on Plaintiff, if there are any legal remedies that remain in which to challenge her eviction, they are in the state courts, not in this federal district court.

## CONCLUSION

The Court dismisses this action for the reasons discussed above. Accordingly, the Court also denies all requests for immediate injunctive relief in Plaintiff's complaint and OTSC.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

SO ORDERED.

Dated:   September 5, 2025
         New York, New York

                                       /s/ Laura Taylor Swain
                                       LAURA TAYLOR SWAIN
                                       Chief United States District Judge